MAGILL v. COUNTY OF LANCASTER.

1. DEFECT IN REPAIR OF HIGHWAY—CARELESSNESS.—Where a person wilfully or heedlessly undertakes to drive his vehicle over a highway, which is shown by ordinary foresight to be in a dangerously defective condition, and thereby sustains injury, such injury cannot properly be said to result from a defect in the repair of the highway, but from his own wilfulness or recklessness.
2. CHARGING JURIES—REQUESTS.—Error cannot be imputed to the trial judge for failure to charge that which was not requested.
3. NEW TRIAL—FACTS.—This court cannot review an order refusing a new trial, which was moved on the minutes, for insufficiency of evidence.

Before ALDRICH, J., Lancaster, March, 1892.

Action by Elias Magill and Mary, his wife, against the County of Lancaster, commenced in September, 1890. The judge charged the jury as follows:

*Gentlemen of the jury:* This is an action brought by Mr. Magill and his wife against the County of Lancaster, to recover damage alleged to have been sustained or caused by a defect in the repair of a highway in Lancaster County. The damages claimed to have been sustained was the injury to Mrs. Magill and the buggy that you have heard of in the testimony. The amount is fixed in the complaint at $500. The County of Lancaster is a corporate body, the county commissioners are its agents or representatives. They represent the people, and public roads are necessary to the use and convenience of the people, and they are placed under the control of the county commissioners. In order to accomplish the purpose for which roads are constructed, it is necessary that they should be kept in repair, and if they are not—if the county commissioners are derelict in their duty, fail to keep the road in repair—then the people of the county, the taxpayers, whose agents the county commissioners are, should pay any damages arising from the dereliction. The act provides that any body who shall receive bodily injury or damage through a defect of the highway may recover the amount of damages fixed by the finding of a jury.

The questions that naturally arise among others are, was

this road a highway? Was it out of repair, and did the county commissioners allow it to get out of repair? Was the plaintiff injured at the place designated by reason of that defect? If so, what damage, if any, have they sustained? Repairs is a relative term, and it is hard to define it. No one would suppose for a moment that the county commissioners were obliged to keep the road in repair, such as is necessary to keep a railroad in repair for the passage of an engine. In one instance you have a heavy engine, running at a rapid rate of speed, and steam is used; elements which constitute danger. Well, then, what would be negligence and a defect in the roadbed of a railway, might not be in an ordinary highway for the passage of a buggy. So it is a relative term.

It is the duty of the county commissioners to keep the highways in such a condition that they will answer the purpose for safe travel backward and forward across them. Now, then, as to repairs. That term is a relative term, as I have already said; and they must keep those roads in such repair as will answer the purpose for which roads were constructed. I cannot tell you the facts which transpired there. The testimony is before you. The act says the damage must be caused through a defect in the repair of a highway, causeway or bridge. I don't know from the description of this road whether it was a highway or causeway, from the testimony as to the places where there were bushes and poles. Down in my country, we call a causeway where they lay poles and logs across the road, and throw dirt over them. I don't know whether it is so called up in this country or not, but reference must always be had as to the character and condition of the road, as to whether it is in repair and safe. But suppose there is a defect in the road, and it is an open, plain, patent, plain-to-be-seen defect, and a man or woman deliberately or carelessly, seeing the defect, drives a buggy or team down there and gets hurt; then, inasmuch as they are in fault—they saw the defect there, and knew it was there, and they undertook to drive into it and saw it—then it was negligence on their part, and if their negligence, their failure to observe, was the possible cause of the injury, why then the county cannot be held responsible, because their neg-

ligence would be the proximate cause of it. Now, as I tell you, I cannot tell you what occurred there. Sometimes accidents may or may not happen; that is a question for the jury depending upon the facts, whether this good lady was injured and this buggy was broken, because of a defect or due to an accident. If it was due to an accident and not to a defect in the road, the county would not be liable for that.

Now, in regard to the amount of damages, the act is very broad. It says, may recover in an action against the county, the damages fixed by a jury. You cannot find above $500, because they don't ask for any more than that, and I presume that the legislature meant in this act that it should be left to the practical judgment of the jury, if they were entitled to damages, that they should do justice all round. Ordinarily in these cases, when damages result without any intention, or wilfulness, or criminal neglect, inasmuch as there was no wilful intention to hurt the person, there is no punitive damages. In cases where a person intentionally does an act which causes injury to another, or does it maliciously, the jury sometimes finds what we call smart money—punitive damages, as an example. Are these plaintiffs entitled to any damages? Were they damaged by reason of the defect in the repair of the highway? If the defect was plain and apparent, so that a man or woman of ordinary intelligence would have seen it, and did see it, and they drove on there, then their own negligence contributed to it, and they would not be entitled to damages. But if this want of repair in the causeway was the cause of these damages, you must find for the plaintiffs. You will determine that according to your judgment. Your verdict will be, if you find for the plaintiffs, we find for the plaintiffs so many dollars damages, writing it out in letters, and not in figures. If your verdict is for the defendant, your verdict will be simply, we find for the defendant, and sign your name as foreman.

The jury found a verdict for the defendant. The plaintiffs moved on the minutes for a new trial, which motion was refused by the judge. Plaintiffs appealed on the following grounds: I. Because, it is respectfully submitted, the presiding judge erred in stating in his charge to the jury, the provisions

of the statute (section 1087), which makes the counties liable in such cases. II. Because the presiding judge, in his charge to the jury, erred in the following statement made therein, to wit, "that where there is a defect, and it is an open, plain, patent, plain-to-be-seen, defect, and a man or woman deliberately, or carelessly, seeing the defect, drives buggy or team down there, and gets hurt there, inasmuch as they are in *fault*, they saw the defect there, and knew it was there, and they undertook to drive *into* it, and saw it, then it was negligence on their part, and if their *negligence*, their *failure to observe*, was the *possible* cause of injury, why, then, the county cannot be held responsible, because their negligence would be the proximate cause of it." III. Because he erred in charging further, "that if the defect was plain and apparent, so that a man or woman of ordinary intelligence would have seen it, and did see it, and they drove on there, then their own negligence contributed to it, and they would not be entitled to damages." IV. Because the Circuit Judge, in his charge, erred in impressing upon the jury, that the plaintiffs, if the defect in the repair of the road was plain to be seen, may have, by their own *negligence*, contributed to the injury, although they may not have observed that plain and open defect; and if they were thus negligent, and did not avoid the forked limb, brush, or pole projecting out of the ground, as left there by the road workers, they would not be entitled to recover damages. V. Because he should have charged the jury, that if the agent of the defendant, or road hands, left that dangerous forked pole sticking out of the ground a few inches in the middle of the highway, then, if the plaintiff was driving leisurely along in the middle of the road, and the buggy wheel accidentally caught in that forked brush or pole, and threw Mrs. Magill out of the buggy, and thus inflicted injury, the plaintiffs were entitled to a recovery; and that no question of contributory negligence on the part of Mrs. Magill could arise in the case. VI. Because the charge of the judge, as to whether this lady was injured and this buggy broken, because of a defect in the repair of the highway, or was due to an accident, was erroneous and misleading. If *accidental*, the judge charged that the county would

not be liable, failing to show what he meant by the term *accident.* The wheel of the buggy catching in the fork of the brush or pole, the jury may have considered, was accidental, or due to an accident. VII. Because the Circuit Judge, as his charge clearly shows, having assumed that the lady (Mrs. Magill) was hurt, and the buggy broke, and as the evidence also showed this, erred in refusing the motion for a new trial made on the minutes of the court. VIII. Because the plaintiffs, on the whole testimony, as a matter of law, were entitled to a verdict for something, the only question being as to the amount. IX. Because the judge erred, in his instructions to the jury, on the evidence adduced, by charging the jury that the question of contributory negligence on the part of plaintiffs, in such a case, could arise, so as to prevent a recovery.

*Messrs. R. E. & R. B. Allison,* for appellants.

*Messrs. Jones & Williams,* contra.

April 3, 1893.   The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.   The plaintiffs brought this action to recover damages for personal injuries sustained by the plaintiff, Mary, who is the wife of her coplaintiff, by reason of being thrown from a buggy, belonging to the plaintiff, Elias, as well as for injuries to the buggy; the allegation being that such disaster was caused by a defect in the repair of a certain highway, over which the plaintiff, Mary, was traveling, which the defendant corporation was bound to keep in repair. It is alleged in the complaint, that the defendant had negligently and carelessly permitted said highway to be worked, by allowing forked brush to be thrown into the washes on said highway, and leaving them insufficiently covered by earth; that on the occasion when the injury complained of occurred, the wheel of the buggy in which said plaintiff was riding was caught in the fork of a projecting limb of the brush, and she was thrown from the buggy and injured in her person, and the buggy was broken; all of which is alleged to have occurred without any fault or negligence on her part. The defendant answered, setting up two defences: 1st, a general denial of all allegations of negli-

# 32                  MAGILL *v.* LANCASTER.

gence on its part; 2d, that the injury complained of was caused neither by the negligence of the defendant nor by any defect in the repair of said highway, but was due to the negligence and fault of the plaintiff, Mary, herself.

Upon the close of the testimony, which is all set out in the "Case," but which need not be adverted to here, as we have no jurisdiction in a law case to review any findings of fact, the Circuit Judge charged the jury as set out in the "Case;" and as we shall advert specially only to such parts of the charge as are excepted to, we deem it due to the Circuit Judge that his whole charge should be incorporated in the report of the case, in order that those portions of the charge which are excepted to may be read in connection with the context. The jury having rendered a verdict for the defendant, and a motion on the minutes for a new trial having been made and refused, judgment was entered on the verdict, and the plaintiffs appealed upon the several grounds set out in the record, which should likewise be embraced in the report of the case.

The first ground having been abandoned at the argument here, need not be considered.

The second ground imputes error to the Circuit Judge in saying to the jury: "That where there is a defect in the road, and it is an open, plain, patent, plain-to-be-seen defect, and a man or woman, deliberately or carelessly, seeing the defect, drives buggy or team down there, and gets hurt there, inasmuch as they are in fault, they saw the defect there, and knew it was there, and they undertook to drive into it, and saw it, then it was negligence on their part, and if their negligence, their failure to observe, was the *possible* [which word, it was admitted on the argument here, should be *"proximate"* and not "possible"] cause of injury, why, then, the county cannot be held responsible, because their negligence would be the proximate cause of it." In this connection we will also consider the third, fourth, and ninth grounds of appeal, which are on the same line. It seems to us that the instructions here complained of were fully warranted by the decisions of this court in the cases of *Laney* v. *Chesterfield County,* 29 S. C., 140, and *Acker* v. *County of Anderson,* 20 *Id.,*

495. The doctrine of those cases is, practically, this: that where a person either wilfully or heedlessly undertakes to drive his vehicle across a bridge or over a highway which is shown by ordinary foresight to be in a dangerously defective condition, and thereby sustains injury, such injury cannot properly be said to result from a defect in the repair of such bridge or highway, but is due to his own wilfulness or recklessness in disregarding the warning held out by the patent condition of such bridge or highway. We do not see, therefore, that either of these grounds can be sustained.

Inasmuch as there was no request to charge either of the propositions upon which the fifth and sixth grounds are based, they need not be considered under the well settled rule.

The seventh and eighth grounds impute error to the Circuit Judge in refusing the motion for a new trial on the minutes, although the eighth ground does not, in terms, so say. But the manifest object of both of these grounds is to raise questions as to the sufficiency of the testimony, which, in a law case, we have no right to consider. All the questions of fact were fully and fairly left to the jury, and if the Circuit Judge did not see fit to set aside their verdict, with which, from all that we can see, he may have been entirely satisfied, we certainly cannot say that there was any error of law in refusing the motion for a new trial.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.